**United States District Court for the District of Columbia**

Joshua White                                                  :
                                                              :
                        v.                                    :        Civil Action No.
                                                              :        Jury Trial Demanded
Washington Intern Student Housing LLC,     :
Amos Gelb and Washington Media Institute :

### *Complaint*

Plaintiff, Joshua White, brings a series of claims against the defendants, of which the following is a statement:

1.      Plaintiff, Joshua White, is a male resident of this judicial district.

2.      Defendant, Washington Intern Student Housing LLC ("WISH"), provides housing for interns and students in the Washington DC area.  It has a principal place of business at 237 Massachusetts Avenue NE, Washington DC 20002.

3.      Defendant, Amos Gelb, is the Director of Defendant, Washington Media Institute ("WMI").  WMI provides full-time internships with media organizations in Washington DC.  It has a principal place of business at 1779 Massachusetts Avenue NW, Washington DC 20036.

4.      This Court has original jurisdiction to hear this Complaint and adjudicate the claims stated herein under 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. §§2000d-2, 2000e-5(f), this action being brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000d and 2000e et seq., and the Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (Nov. 21, 1991).  This Court has jurisdiction to adjudicate Mr. White's state law claims, including claims under the District of Columbia Human Rights Act of 1977, as amended, D.C. Code §§ 2-1401.01, et seq. ("DCHRA"), pursuant to the Court's exercise of supplemental jurisdiction under 28 U.S.C. § 1367.

5.      Plaintiff timely filed a charge of sex discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the District of Columbia Office of Human Rights, received a Notice of Right to Sue ("NRTS") from the EEOC, and has commenced this action within 90 days of receipt of the NRTS.

6.      At all times relevant hereto, WISH was an "employer" within the meaning of Title VII and the DCHRA and employed more than 100 persons.

7.      The acts set forth in this Complaint were authorized, ordered and/or done by defendants' officers, agents, employees and/or representatives while actively engaged in the management and operation of defendants' business.

8.      Venue is proper in this District by reason of 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Mr. White's claims arose in this District.

*Background Facts*

9.      Mr. White began his employment with WISH in December 2012.  In August 2013, he moved into Woodley Park, one of WISH's dormitories at 2807 Connecticut Avenue NW, Washington DC, and managed the building as part of his job duties.

10.      Woodley Park is the dormitory where WMI program participants live during their internships.

11.      Mr. White was last employed by WISH as an Operations Manager at an annual salary of $65,000 plus bonuses (based on performance).

12.      Mr. White was terminated on August 21, 2017 by Jacqueline Lewis, Managing Member of WISH, based on a false performance-related issue.  In truth, he was fired in retaliation for reporting a pattern of sexual harassment directed against him by Amos Gelb, the Director of WMI.

13.     Ms. Lewis admitted to Mr. White that in response to the numerous complaints of sexual harassment he made to WISH management about Gelb, he had threatened to terminate WMI's contract with WISH unless Mr. White was terminated.

14.     Gelb began sexually harassing Mr. White soon after Mr. White moved into Woodley Park. In addition to housing WMI program participants at Woodley Park, it was also used for various WMI classes.

15.     Gelb would constantly knock on Mr. White's door late at night, make sexually suggestive remarks to Mr. White, and touch Mr. White in an aggressive, sexual manner. When Mr. White ignored Gelb's late night knocks at his door, notes of a sexual nature specifically mentioning Mr. White by name began to appear on his apartment door and in various locations throughout Woodley Park. Attached hereto as Exhibit A and made a part hereof are some of the notes obtained by Mr. White.

16.     In October 2016, Gelb, surreptitiously through a crack in the curtains over a window in Mr. White's first-floor apartment, recorded a video of Mr. White and his partner having sex and sent it to several residents of the building. In fact, it was a building resident who informed Mr. White that she had received the video. Mr. White has not been able to obtain a copy of the video.

17.     Mr. White began complaining to WISH's managers, by email and verbally, as soon as Gelb began harassing him. He sent approximately 15 detailed emails to WISH management complaining about Gelb's conduct. Mr. White has not been able to obtain copies of the emails because WISH changed his email password when he was fired.

3

18.     Mr. White complained verbally about Gelb's conduct approximately 30 times total to Jacqueline Lewis, Marie Dennis, WISH's Vice President of Management, and Dan Lewis, WISH's Manager.

19.     WISH management took no action to stop Gelb from harassing Mr. White, in part because of the lucrative financial relationship between WISH and WMI. On information and belief, at the time WMI had a contract with WISH to house participants in WMI's internship program in Woodley Park; the contract brought in approximately $500,000 in annual revenue to WISH.

20.     Despite Mr. White's numerous written and verbal complaints to WISH management about the sexual harassment perpetrated by Gelb, Gelb continued to sexually harass Mr. White.

21.     In July 2017, Mr. White was unable to avoid Gelb during Mr. White's night rounds, and Gelb continued to make sexually suggestive remarks to Mr. White and to try to touch him. Gelb's conduct became so unbearable that Mr. White told Gelb that he would call the police if Gelb did not leave the building. Mr. White was fired three weeks later, on August 21, 2017. Attached hereto as Exhibit B and made a part hereof is a true and correct copy of the letter dated August 21, 2017 from Jacqueline Lewis to Joshua White.

22.     On September 4, 2017, in apparent recognition of the illegality of Mr. White's termination, Marie Dennis sent a letter to Mr. White offering him four weeks' severance pay in exchange for a general release of all claims. Mr. White refused to sign the letter. Attached hereto as Exhibit C and made a part hereof is a true and correct copy of the letter dated September 4, 2017 from Marie Dennis to Joshua White.

23.     Gelb's sexual harassment of Mr. White was facilitated by WISH and WMI. In particular, Jaqueline Lewis, Marie Dennis and Dan Lewis knew of Gelb's sexual harassment of Mr. White, but none of them took any action to stop it or to otherwise protect Mr. White.

24.     Jacqueline Lewis, Marie Dennis and Dan Lewis aided and abetted Mr. Gelb in the commission of his sexual harassment against Mr. White.

25.     By virtue of Gelb's position as the Director of WMI, WMI was aware of and ratified Gelb's conduct and found it an acceptable part of his employment.

26.     WMI is liable for Gelb's misconduct because it was perpetuated within the scope of his employment.

27.     The sexual harassment experienced by Mr. White constitutes discrimination based on sex under federal law and the law of the District of Columbia with respect to the terms, conditions or privileges of employment.

28.     Mr. White was terminated because of the sexual harassment he was subjected to and in retaliation for complaining about that sexual harassment.

29.     The sexual harassment that Mr. White was subjected to was unwelcome, it was based on his sex, it was severe and pervasive, it was humiliating and it unreasonably interfered with his work performance. Mr. White viewed the harassment as creating an abusive and hostile work environment, as would a reasonable person under similar circumstances.

30.     Despite express knowledge of the sexual harassment to which Mr. White was subjected by Gelb, defendants failed and refused to take any appropriate corrective action or to otherwise protect Mr. White. Rather, defendants did nothing, and ultimately WISH terminated Mr. White, ostensibly for a performance-related issue, but in truth in retaliation for his sexual harassment complaints. Under these circumstances, the retaliatory action that Mr. White

suffered, termination of employment, would deter a reasonable employee from exercising his rights.

31.     Defendants acted and failed to act with respect to Mr. White as described above because of his sex and in retaliation for his complaints about defendants' creation and perpetuation of a hostile work environment caused by the harassment.

32.     Defendants' actions described above constitute discrimination against Mr. White because of his sex and retaliation against Mr. White for having exercised his rights under federal law and the law of the District of Columbia to complain to defendants about their sexual harassment and retaliation.

33.     By reason of defendants' discrimination, harassment and retaliation, Mr. White suffered extreme harm, including mental anguish, emotional distress, humiliation, embarrassment, discomfort, anxiety, depression, loss of compensation, wages, back and front pay, and other employment benefits.

34.     Defendants acted and failed to act with reckless disregard for Ms. White's federally and state protected rights.

### Count I

### *Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e*

35.     Plaintiff restates and realleges paragraphs 1- 31, inclusive, as though set forth here in full.

36.     Defendant WISH discriminated against Mr. White in connection with the terms, conditions and privileges of his employment because of his sex and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991.

37.     Defendant WISH's conduct was intentional, deliberate, willful and in callous disregard of Mr. White's rights.

38.     By reason of Defendant WISH's discrimination and retaliation, Mr. White is entitled to all legal and equitable remedies available under Title VII.

### Count II

*District of Columbia Human Rights Act of 1977, D.C. Code §§2-1401.01, et seq.*

39.     Plaintiff restates and realleges paragraphs 1 – 38, inclusive, of this Complaint as though set forth here in full.

40.     Defendant WISH discriminated against Mr. White because of his sex and sexual orientation and retaliated against him because he complained about defendant WISH's discrimination and harassment, in violation of the DCHRA.

41.     Defendant WISH's conduct was intentional, deliberate, willful and in callous disregard of Mr. White's rights.

42.     By reason of defendant WISH's discrimination, harassment and retaliation, Mr. White is entitled to all legal and equitable remedies available under the DCHRA.

### Count III

*Intentional Infliction of Emotional Distress*

43.     Plaintiff restates and realleges paragraphs 1-41, inclusive, of this Complaint as though set forth here in full.

44.     Defendants knew or, in the exercise of reasonable care, should have known, that Gelb's abusive and outrageous conduct would cause, and did cause, Mr. White mental distress, and was so extreme so as to exceed all bounds that are usually tolerated in a decent and civilized society.

45.     Gelb's extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Mr. White.

46.     Gelb's conduct was committed within the scope of his employment at WMI.

47.     As a direct and proximate result of the acts and conduct described above, Mr. White suffered actual damages, including loss of earnings and future earning capacity, emotional distress, mental anguish, humiliation and embarrassment, attorney's fees and costs.

48.     The acts of the defendants described above were willful, wanton, malicious, intentional, oppressive and done in willful and conscious disregard of the rights, welfare and safety of Mr. White, thereby justifying an award of punitive damages.

### Count IV

#### Negligent Infliction of Emotional Distress

49.     Plaintiff restates and realleges paragraphs 1-48, inclusive, as though set forth here in full.

50.     Defendants knew or reasonably should have known that the conduct described herein would and did proximately result in emotional distress to Mr. White.

51.     At all relevant times, defendants had the power, ability, authority and duty to stop engaging in the conduct described herein and/or to intervene to prevent or prohibit said conduct.

52.     Despite said knowledge, power and duty, defendants negligently failed to act so as to stop engaging in the conduct described herein and/or to prevent or prohibit such conduct or otherwise protect Mr. White from foreseeable injury.

53.     As a direct and proximate result of defendants' unlawful conduct, Mr. White suffered and continues to suffer serious emotional distress, anguish, emotional injuries, as well as economic harm, all to his damage in amounts to be proven at trial.

## Count V

### Negligent Supervision and Retention

54.     Plaintiff restates and realleges paragraphs 1-53, inclusive, as though set forth here in full.

55.     At all times material, WMI employed Amos Gelb as Director of WMI.

56.     Gelb was unfit to work directly with Mr. White and posed a particular risk of sexually harassing Mr. White.

57.     WMI knew or should have known that Gelb was unfit to work directly with Mr. White and posed a particular risk of sexually harassing Mr. White.

58.     Gelb's unfitness and particular risk to Mr. White harmed Mr. White.

59.     WMI's negligence in supervising and/or retaining Gelb was a substantial factor in causing harm to Mr. White.

## Count VI

### Civil Battery

60.     Plaintiff restates and realleges paragraphs 1-59, inclusive, as though set forth here in full.

61.     Gelb intended to commit an act of unwanted contact and/or caused imminent apprehension of such an act against Mr. White.

62.     Gelb did commit an unwanted contact with Mr. White's person in a harmful or offensive manner.

63.     Gelb's battery of Mr. White caused physical, mental and/or emotional harm to Mr. White.

64.     Gelb's conduct was committed within the scope of his employment at WMI.

65.     Gelb's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of WMI's business.

66.     Holding WMI liable furthers the policy goals of *respondeat superior*, given that Mr. White does not have a separate remedy under Title VII because he was not an employee of WMI.

### Count VII

#### Assault

67.     Plaintiff restates and realleges paragraphs 1-66, inclusive, as though set forth here in full.

68.     Gelb intended to cause apprehension of harmful or offensive conduct against Mr. White.

69.     Gelb's actions did, in fact, cause Mr. White to fear imminent harmful or offensive contact by Gelb.

70.     Gelb's conduct was committed within the scope of his employment at WMI.

71.     Gelb's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of WMI's business.

72.     Holding WMI liable furthers the policy goals of respondeat superior, given that Mr. White does not have a separate remedy under Title VII because he was not an employee of WMI.

### Jury Demand

73.     Mr. White demands a trial by jury of the claims asserted herein.

### Prayer for Relief

WHEREFORE, Plaintiff, Joshua White, respectfully prays that the Court:

       a.     adjudge, decree and declare the practices of Defendants complained of herein to be violative of the rights secured to Plaintiff.

       b.     issue a permanent prohibitory injunction prohibiting Defendants and their officers, agents, employees, and successors from engaging in the practices complained of herein;

       c.     enter judgment in his favor and against Defendant WISH on Counts I and II for all legal and equitable relief available under Title VII and the DCHRA, as the case may be, including, but not limited to, back pay, front pay (in lieu of reinstatement), interest, fringe benefits, mental anguish and emotional distress, and other compensatory damages in amounts to be determined at trial;

       d.     enter judgment in his favor and against Defendant WISH on Counts I, II, III and IV for pain and suffering, compensatory and punitive damages;

       e.     enter judgment in his favor and against Defendant WMI on Counts III, IV, V, VI and VII for pain and suffering, compensatory and punitive damages;

       f.     enter judgment in his favor and against Defendant Gelb on Counts III, IV, VI and VII for pain and suffering, compensatory and punitive damages;

       g.     order Defendant WISH to pay punitive damages to Plaintiff on Count I in an amount to be determined at trial under Title VII;

       h.     order Defendant WISH to pay Plaintiff's attorneys' fees, costs, expenses, disbursements, and expert witness fees under 42 U.S.C. §1981a and 42 U.S.C. §1988 with respect to Count I; and

       i.      grant such other and further legal and equitable relief as may be found

appropriate and as the Court may deem just or equitable.


Robert T Vance Jr
Law Offices of Robert T Vance Jr
100 South Broad Street, Suite 1525
Philadelphia PA 19110
215 557 9550 tel / 215 278 7992 fax
rvance@vancelf.com

*Attorney for Joshua White*