# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSHUA WHITE,<br>    Plaintiff<br><br>    v.<br><br>WASHINGTON INTERN STUDENT<br>HOUSING, *et al.*,<br>    Defendants | Civil Action No. 18-2021 (CKK) |

## MEMORANDUM OPINION
(April 25, 2019)

Plaintiff Joshua White is a former employee of Washington Intern Student Housing ("WISH"). As an employee of WISH, Plaintiff managed a dormitory referred to as Woodley Park. Washington Media Institute ("WMI"), an organization that provides internships with media organizations in the District of Columbia, houses some of their participants in Woodley Park. Plaintiff argues that he was wrongfully terminated by WISH in retaliation for complaints that he made about alleged harassment by Amos Gelb, the Director of WMI. Plaintiff brings claims against WISH, WMI, and Mr. Gelb ("all Defendants") for the intentional infliction of emotional distress and the negligent infliction of emotional distress. He also brings claims against WISH for sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and the District of Columbia Human Rights Act ("DCHRA"). He brings further claims for civil battery and assault against Mr. Gelb and WMI. Finally, he brings a claim of negligent supervision and retention against WMI.

Before the Court are WISH's [14] Motion to Dismiss, or in the alternative, Motion for Summary Judgment and Mr. Gelb and WMI's [13-1] Motion to Dismiss. WISH moves for summary judgment on Plaintiff's Title VII claim as well as dismissal of Plaintiff's claims for the intentional and negligent infliction of emotional distress. WMI and Mr. Gelb move for dismissal

of Plaintiff's claims for civil battery, assault, and the intentional and negligent infliction of emotional distress. Finally, WMI moves to dismiss Plaintiff's claim for negligent supervision and retention.

Upon consideration of the pleadings[1], the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS IN PART and DENIES IN PART Defendants' Motions. The Court GRANTS Defendants' Motions and DISMISSES Plaintiff's claims for:

- Civil battery, because that claim is barred by the statute of limitations;

- Assault, because that claim is barred by the statute of limitations;

- Intentional infliction of emotional distress, because that claim is barred by the statute of limitations; and

- Negligent infliction of emotional distress, because Plaintiff has failed to state a claim for which relief may be granted.

The Court otherwise DENIES Defendants' Motions.

_____

[1] The Court's consideration has focused on the following documents:
- WISH's Mot. to Dismiss, or in the alternative, Mot. for Summary Judgment ("Def. WISH's Mot."), ECF No. 14;
- Pl.'s Mem. of Law in Opp'n to Def. WISH's Mot. to Dismiss, or in the alternative, Mot. for Summary Judgment ("Pl.'s Opp'n to Def. WISH"), ECF No. 16-2;
- WISH's Reply in Further Support of its Mot. to Dismiss, or in the alternative, Mot. for Summary Judgment ("Def. WISH's Reply"), ECF No. 18;
- Pl.'s Sur Reply Mem. of Law in Opp'n to Def. WISH's Mot. to Dismiss, or in the alternative, Mot. for Summary Judgment ("Pl.'s Sur Reply to Def. WISH"), ECF No. 21;
- Defs. Amos Gelb and WMI's Mem. in Support of their Mot. to Dismiss the Compl. (Defs. Gelb and WMI's Mot."), ECF No. 13-1;
- Pl.'s Mem. of Law in Opp'n to Defs. Amos Gelb and WMI's Mot. to Dismiss the Compl. (Pl.'s Opp'n to Defs. Gelb and WMI"), ECF No. 15-2; and
- Defs. Amos Gelb and WMI's Reply in Further Support of their Mot. to Dismiss ("Defs. Gelb and WMI's Reply"), ECF No. 17.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

# I. BACKGROUND

Plaintiff began working for WISH in late 2012. In August 2013, he moved into Woodley Park, one of WISH's dormitories. As part of his employment responsibilities, Plaintiff managed the dormitory. Compl., ECF No. 2, ¶ 9. WMI participants were some of the residents at Woodley Park. *Id.* at ¶ 10. And, WMI occasionally held classes at Woodley Park. *Id.* at ¶ 14.

Plaintiff alleges that Mr. Gelb, the Director of WMI, began sexually harassing him soon after Plaintiff moved into Woodley Park. *Id.* Plaintiff claims that Mr. Gelb would knock on his door late at night, make sexually suggestive remarks, and touch him in an aggressive, sexual manner. *Id.* at ¶ 15. Plaintiff further alleges that Mr. Gelb would leave sexual notes on his door and at other locations throughout Woodley Park. *Id.* Plaintiff also claims that in October 2016, Mr. Gelb secretly recorded a video of Plaintiff and his partner having sex and sent it to several Woodley Park residents. *Id.* at ¶ 16.

Plaintiff alleges that he complained verbally and by email to WISH's management as soon as Mr. Gelb began harassing him. *Id.* at ¶ 17. Plaintiff claims that he sent approximately 15 emails to WISH's management detailing Mr. Gelb's behavior. *Id.* He further alleges that he complained verbally at least 30 times to Jacqueline Lewis, Managing Member of WISH, Marie Dennis, WISH's Vice President of Management,[2] and Dan Lewis, WISH's Manager. *Id.* at ¶ 18. Despite these complaints, Plaintiff contends that WISH took no actions to stop Mr. Gelb's

---

[2] There appears to be some disagreement about Ms. Dennis's position within WISH. Plaintiff refers to Ms. Dennis as WISH's Vice President of Management. Compl., ECF No. 2, ¶ 18. But, in her affidavit, Ms. Dennis states that she is the Chief Executive Officer of WISH. Affidavit of Marie Dennis, ECF No. 14-1. As it has no effect on the disposition of Defendants' Motions, the Court will refer to Ms. Dennis as the Vice President of Management for purposes of this Memorandum Opinion.

alleged harassment of Plaintiff. Plaintiff posits that WISH failed to take action due to their lucrative financial relationship with WMI. *Id.* at ¶ 19.

In July 2017, Plaintiff alleges that Mr. Gelb continued to make sexually suggestive remarks and attempted to touch him. Plaintiff claims that he told Mr. Gelb that he would call the police if he did not leave the building. *Id.* at ¶ 21. Approximately three weeks later, on August 21, 2017, Plaintiff was fired from WISH. *Id.* Plaintiff alleges that Ms. Lewis admitted that, in response to Plaintiff's complaints to WISH about Mr. Gelb, Mr. Gelb had threatened to terminate WMI's contract with WISH unless Plaintiff was fired. *Id.* at ¶ 12. On September 4, 2017, Plaintiff alleges that Ms. Dennis sent him a letter offering four weeks of severance pay in exchange for a general release of liability. *Id.* at ¶ 22. But, Plaintiff refused to sign the letter. *Id.*

Based on these events, Plaintiff filed this lawsuit on August 29, 2018. Plaintiff brings claims for:

- Count 1- Sex discrimination and retaliation under Title VII against WISH;

- Count 2- Sex discrimination and retaliation under the DCHRA against WISH;

- Count 3- Intentional infliction of emotional distress against all Defendants;

- Count 4- Negligent infliction of emotional distress against all Defendants;

- Count 5- Negligent supervision and retention against WMI;

- Count 6- Civil battery against WMI and Mr. Gelb; and

- Count 7- Assault against WMI and Mr. Gelb.

*Id.* at ¶¶ 35-73. Defendants have moved for the dismissal of all claims except for Counts 1 and 2. Additionally, WISH requests summary judgment on Count 1. These Motions are currently before the Court.

## II. LEGAL STANDARD

### 1. Motion to Dismiss Standard

Defendants move to dismiss many of the claims in Plaintiff's Complaint under Rule 12(b)(6). According to Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### 2. Summary Judgment Standard

In addition to the dismissal of many of Plaintiff's claims, WISH moves for summary judgment on Plaintiff's Count 1 Title VII claim. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that he] ... is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a material fact, that is, one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute must also be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.* In order to establish a genuine dispute, the non-moving party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or

declarations, or other competent evidence—in support of his position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants—CWA, AFL–CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). When "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in its favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52.

### III. DISCUSSION

Plaintiff brings seven claims against Defendants. Together, Defendants move for dismissal or summary judgment on six of those claims. First, WISH moves for summary judgment on Plaintiff's Count 1 claim for discrimination and retaliation under Title VII, arguing that WISH is not an "employer" subject to Title VII. Second, Mr. Gelb and WMI move to dismiss Plaintiff's Counts 6 and 7 claims for civil battery and assault, contending that those

claims are barred by the statute of limitations. Third, all Defendants move for dismissal of Plaintiff's Count 3 claim for intentional infliction of emotional distress, arguing that the claim is also barred by the statute of limitations. Fourth, all Defendants move for dismissal of Plaintiff's Count 4 claim for negligent infliction of emotional distress based on Plaintiff's failure to state a claim for which relief may be granted. And finally, WMI moves to dismiss Plaintiff's Count 5 claim for negligent supervision and retention, arguing that WMI did not have actual or constructive knowledge of Mr. Gelb's alleged conduct. The Court will address each argument in turn.

### 1. Count 1- Title VII Discrimination and Retaliation

First, WISH moves for summary judgment on Plaintiff's Count 1 claim for discrimination and retaliation under Title VII. In order to assert a claim under Title VII, a plaintiff must establish that a defendant is an employer with 15 or more employees. 42 USC § 2000e(b). WISH argues that, because it does not have 15 or more employees, it is not an employer subject to Title VII liability.

In order to establish that it is not a Title VII employer with 15 or more employees, WISH submits an affidavit from an official, Ms. Dennis. Because WISH requests that the Court consider materials outside of the pleadings, the Court will treat this portion of WISH's Motion as one for summary judgment. Fed. R. Civ. P 12(d) (When, on a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). In her affidavit, Ms. Dennis submits time sheets showing that from October 2016 through August 2017 WISH employed 13 or fewer people. Affidavit of Marie Dennis, ECF No. 14-1, ¶ 3.

As an initial matter, Plaintiff argues that Ms. Dennis's affidavit does not account for the entire relevant time period. Plaintiff contends that, because the alleged Title VII violation was continuing from August 2013 through September 2017, Ms. Dennis's affidavit, which accounts for employees only from October 2016 through August 2017, does not account for the entire relevant timeframe. But, the court need not decide this issue. Even if the Court were to assume for purposes of this Memorandum Opinion that the relevant time period spans only from October 2016 to August 2017, Plaintiff has established a dispute of material fact as to the number of employees employed by WISH.

In response to Ms. Dennis's affidavit, Plaintiff filed Sur-Reply requesting additional time to conduct discovery on the number of workers employed by WISH. Attached to his Sur-Reply, Plaintiff submitted a declaration contesting the number of WISH employees. In his declaration, Mr. White stated that he "managed and provided direction" to approximately 12-13 cleaning and maintenance workers who were employed by WISH. Dec. of Joshua White, ECF No. 21-1, ¶¶ 5-7. Plaintiff's declaration on WISH's employment of cleaning and maintenance workers directly contradicts Ms. Dennis's affidavit, which states that these cleaning and maintenance workers were independent contractors and not employees. In his declaration, Plaintiff further contends that, at all relevant times, WISH also employed 10-15 students who received a 50% reduction in their rent in exchange for working for WISH. Plaintiff claims that "[t]hey were referred to as interns, but were paid for their services by means of the rent reduction." *Id.* at ¶ 8. According to Plaintiff, neither the cleaning and maintenance workers nor the students were included among those employees disclosed in Ms. Dennis's affidavit. *Id.* at ¶ 9. With the addition of these alleged employees, WISH would qualify as an employer for purposes of Title VII liability.

Under Federal Rule of Civil Procedure 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Generally, summary judgment is premature unless the parties have "had a full opportunity to conduct discovery." *Liberty Lobby*, 477 U.S. at 257. A request from the non-moving party for additional time to conduct discovery should be granted "almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Berkeley v. Home Ins. Co.*, 68 F.3d 1409, 1414 (D.C. Cir. 1995) (internal quotation marks omitted). In order to be granted time to conduct discovery, the nonmoving party must submit an affidavit or declaration which "state[s] with sufficient particularity ... why discovery [is] necessary." *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1045 (D.C. Cir. 2008) (internal quotation marks omitted).

The Court concludes that Plaintiff's declaration provides just cause to allow additional time for discovery. This case is in its preliminary stages, and Plaintiff has not had any opportunity to conduct discovery. *See* Affidavit of Robert T. Vance Jr., ECF No. 16-4, ¶ 3 (explaining that Plaintiff needs to conduct discovery to determine whether WISH's statements regarding the employment status of cleaning and maintenance workers are correct). Taken together, Ms. Dennis's affidavit and Plaintiff's declaration show that there remain disputed issues of material fact concerning whether or not WISH is an employer for purposes of Title VII. Plaintiff has asserted both that the cleaning and maintenance workers were employed, at least in part, by WISH, and that WISH employed students but wrongfully referred to them as "interns." Plaintiff's request for discovery is based on more than the sole "desire to test and elaborate affiants' testimony." *Strang v. U.S. Arms Control & Disarmament Agency*, 864 F.2d 859, 861

(D.C. Cir. 1989) (internal quotation marks omitted). Instead, based on personal knowledge, Plaintiff asserts that, during the relevant time period, WISH employed more workers than have been disclosed. Only by allowing discovery will Plaintiff be granted access to the facts which would prove or disprove his assertions.

Accordingly, the Court DENIES WITHOUT PREJUDICE WISH's motion for summary judgment as to Plaintiff's Count 1 claim for discrimination and retaliation under Title VII. Discovery is necessary to resolve the disputed issue of whether or not WISH has employed over 15 workers, thus making it an employer subject to Title VII. As the factual record is developed, WISH may again bring this claim if it appears that Plaintiff's declaration is not supported by the facts.

### 2. Counts 6 and 7- Civil Battery and Assault

Second, WMI and Mr. Gelb move for dismissal of Plaintiff's Counts 6 and 7 claims for civil battery and assault. WMI and Mr. Gelb argue that these claims are barred by the statute of limitations. The parties agree that the statute of limitations for battery and assault is one year. D.C. Code § 12-301(4); Pl.'s Opp'n to Defs. Gelb and WMI, ECF No. 15-2, 3 ("Mr. White acknowledges that under D.C. law, the statute of limitations for claims of civil assault and battery is 1 year."). Accordingly, the only issue before the Court is whether Plaintiff filed his claims for battery and assault within the one-year statute of limitation.

Plaintiff filed this suit on August 29, 2018. Based on the one-year statute of limitations, the last act giving rise to Plaintiff's claims for battery and assault must have occurred on or after August 29, 2017. Here, all of Mr. Gelb's conduct alleged in support of Plaintiff's battery and assault claims, such as sexual harassment, touching, door-knocking, and more, occurred at Woodley Park while Plaintiff was employed and living there. *See* Compl., ECF No. 2, ¶¶ 14-16,

21. But, Plaintiff was fired from working at Woodley Park, and banned from living there, on August 21, 2017. *See* Compl. Exhibit B, ECF No. 1-3 (notifying Plaintiff of his termination and instructing him to leave the building on August 21, 2017). Plaintiff alleges no further contact with Mr. Gelb or WMI following his termination and move from Woodley Park. Accordingly, all of the conduct on which Plaintiff bases his claims for battery and assault occurred on or before August 21, 2017, which is more than one year prior to the filing of this lawsuit on August 29, 2017.

Despite the foregoing, Plaintiff argues that his claims are timely. Plaintiff argues that the last act at giving rise to his claims actually occurred on September 4, 2017 when WISH sought to obtain from him a general liability release. But, the one-year statute of limitations begins to run "at the time the plaintiff's interest is invaded or at the time the tortious act is committed which causes injury." *Chen v. Monk*, 701 F. Supp. 2d 32, 36 (D.D.C. 2010) (quoting *Nat'l R.R. Passenger Corp. v. Krouse*, 627 A.2d 489, 494 (D.C. 1993)). The letter sent by WISH seeking to obtain a release from liability did not invade Plaintiff's interest nor was it a tortious act. Moreover, the letter was sent by WISH, not by WMI or Mr. Gelb. And, Plaintiff cites no support for the contention that the statute of limitations for claims against one defendant can be affected by the unrelated acts of a third-party defendant. Because WISH's September 4, 2017 letter did not contribute to Plaintiff's battery and assault claims against Mr. Gelb and WMI, that letter cannot be used to extend the statute of limitations for Plaintiff's battery and assault claims against Mr. Gelb and WMI.

The facts alleged against Mr. Gelb and WMI in support of Plaintiff's battery and assault claims occurred no later than August 21, 2017. But, Plaintiff did not file this lawsuit until August 29, 2018, more than one year after his claims accrued. Accordingly, those claims are barred by

the statute of limitations. The Court GRANTS Mr. Gelb and WMI's Motion and DISMISSES WITH PREJUDICE Counts 6 and 7.

### 3. Count 3- Intentional Infliction of Emotional Distress

Third, all Defendants move for dismissal of Plaintiff's Count 3 claim for the intentional infliction of emotional distress. Defendants argue that Plaintiff's claim for the intentional infliction of emotional distress should be dismissed because it is also barred by the statute of limitations. Specifically, Defendants argue that Plaintiff's claim for the intentional infliction of emotional distress is based on the same factual allegations as his claims for battery and assault, so only a one-year limitations period should apply. The Court agrees.

The District of Columbia Code does not provide a specific statute of limitations period for claims of emotional distress; accordingly, the three-year residuary period generally applies. *Saunders v. Nemati*, 580 A.2d 660, 665 (D.C. 1990) (explaining that "an independent action for intentional infliction of emotional distress, not intertwined with any of the causes of action for which a period of limitation is specifically provided …, is governed by the general residuary three-year limitation"). However, when the facts giving rise to a claim for the intentional infliction of emotional distress are intertwined with the facts for a cause of action with a specified statute of limitations, the intentional infliction of emotional distress claim is also subject to that statute of limitations. *Weiss v. Int'l Brotherhood of Elec. Workers*, 729 F. Supp. 144, 147 (D.D.C. 1990) ("[T]his court has consistently held that the limitations period for the tort of intentional infliction of emotional distress is determined by the limitations period prescribed for the underlying conduct giving rise to the claim, where the emotional distress arises out of the conduct.") (citing cases); *Chen*, 701 F. Supp. 2d at 36-37 (applying a one-year statute of limitations to the plaintiff's intentional infliction of emotional distress claim because it was

"based on the same events as her claims for assault, battery, false arrest and false imprisonment"); *Saunders*, 580 A.2d at 662 (explaining that "in certain cases where intentional infliction of emotional distress was included among a number of alleged torts, the one-year statute of limitation has been applied where the nature of the action rested on the other torts and the emotional distress aspect of the claim was essentially an outgrowth of the other pleaded torts").

Defendants contend that Plaintiff's intentional infliction of emotional distress claim is based on the same events as his claims for battery and assault, so the one-year statute of limitations for those claims should apply. In his Complaint, Plaintiff argues that he has faced severe emotional distress because "Defendants knew or, in the exercise of reasonable care, should have known, that Gelb's abusive and outrageous conduct would cause, and did cause, Mr. White mental distress, and was so extreme as to exceed all bounds that are usually tolerated in a decent and civilized society." Compl., ECF No. 2, ¶ 44. Plaintiff goes on to allege that "Gelb's extreme and outrageous conduct intentionally or recklessly caused severe emotional distress to Mr. White" and that Mr. Gelb's conduct "was committed within the scope of his employment at WMI." *Id.* at ¶¶ 45, 46. The entirety of the support for Plaintiff's intentional infliction of emotional distress claim stems from Mr. Gelb's alleged actions against Plaintiff. Plaintiff pleads no facts in support of his intentional infliction of emotional distress claim which are separate from the facts supporting his claims for battery and assault against Mr. Gelb and WMI. Accordingly, the Court finds that Plaintiff's claim for intentional infliction of emotional distress is bound by the same one-year statute of limitations as his claims for battery and assault.

Plaintiff presents three arguments as to why his intentional infliction of emotional distress claim should not be subject to the one-year statute of limitations. First, Plaintiff argues that his

intentional infliction of emotional distress claim is not sufficiently "intertwined" with his battery and assault claims because they are not "completely dependent" on each other. In support of this argument, Plaintiff cites only one case, *Jovanovic v. U.S.-Algeria Business Council*, 561 F. Supp. 2d 103 (D.D.C. 2008). But in *Jovanovic*, the court concluded that the plaintiff's intentional infliction of emotional distress claim was subject to a one-year statute of limitations because it was "intertwined" with his defamation claim. 561 F. Supp. 2d at 114. As the court explained, "[p]laintiff's intentional infliction of emotional distress claim alleges only that [p]laintiff suffered severe emotional distress upon reading the allegedly false statements …and is therefore dependent on the same personal interests purportedly infringed by [the defendant's] alleged defamation of Plaintiff." *Id.*

Similarly, here, Plaintiff's intentional infliction of emotional distress claim alleges only that Plaintiff suffered severe emotional distress because of Mr. Gelb's "extreme and outrageous conduct." Compl., ECF No. 2, ¶ 45. The only such conduct by Mr. Gelb alleged in the Complaint is the sexual harassment, touching, door-knocking, note-leaving, and video-taking that is also the basis of Plaintiff's battery and assault claims. Plaintiff's claim for the intentional infliction of emotional distress is therefore dependent on the same behavior alleged in Plaintiff's claims for battery and assault. Accordingly, Plaintiff's intentional infliction of emotional distress claim is subject to the one-year statute of limitations. *See Rendall-Speranza v. Nassim*, 107 F.3d 913, 920 (D.C. Cir. 1997) (finding that the plaintiff's intentional infliction of emotional distress claim was subject to a one-year statute of limitations because "[e]very incident that, [the plaintiff] allege[d], contributed to her emotional distress involved an assault and battery").

As to Defendant WISH specifically, Plaintiff argues that, because he has not asserted claims for battery or assault against WISH, his intentional infliction of emotional distress claim

as to WISH cannot be intertwined with his assault and battery claims. But, Plaintiff fails to address the relevant point. What matters is that Plaintiff's intentional infliction of emotional distress claim is premised entirely on Mr. Gelb's alleged battery and assault. As such, his claim for the intentional infliction of emotional distress is bound by the same statute of limitations as his claims for battery and assault.

Second, Plaintiff argues that instead of being intertwined with his claims for battery and assault, it is more reasonable to conclude that his intentional infliction of emotional distress claim is intertwined with his claims of sexual discrimination and retaliation under Title VII and the DCHRA. But, Plaintiff's Title VII and DCHRA claims are premised on WISH's alleged sex discrimination and retaliation. *Id.* at ¶¶ 36, 40. Conversely, his intentional infliction of emotional distress claim is premised exclusively on Mr. Gelb's conduct. Accordingly, Plaintiff's intentional infliction of emotional distress claim is not intertwined with his claims under Title VII and the DCHRA.

Finally, Plaintiff argues that his claim for the intentional infliction of emotional distress is a continuing violation, the last relevant act of which occurred on September 4, 2017 when WISH sent him a letter seeking to obtain a general release of liability. This argument fails for the same reasons discussed above. *See Supra* Sec. III.2. Plaintiff alleges that he suffered severe emotional distress based on Mr. Gelb's "extreme and outrageous conduct." Compl., ECF No. 2, ¶ 45. That conduct ended with Plaintiff's termination and removal from Woodley Park on August 21, 2017. Plaintiff failed to file this lawsuit within a year, instead filing on August 29, 2018. A letter sent by WISH, and unrelated to Mr. Gelb's conduct, cannot extend the statute of limitations for Plaintiff's intentional infliction of emotional distress claim, which is based solely on Mr. Gelb's alleged conduct.

Accordingly, the Court GRANTS Defendants' Motions and DISMISSES WITH PREJUDICE Plaintiff's Count 3 claim for the intentional infliction of emotional distress. Plaintiff's claim for the intentional infliction of emotional distress is based entirely on the same allegations made in support of his battery and assault claims. As such, Plaintiff's claim for intentional infliction of emotional distress is bound by the same one-year statute of limitations as Plaintiff's battery and assault claims. Plaintiff failed to file suit within a year of the accrual of his claims, making such claims untimely.

### 4. Count 4- Negligent Infliction of Emotional Distress

Fourth, all Defendants move for dismissal of Plaintiff's Count 4 negligent infliction of emotional distress claim. Plaintiff has conceded that his negligent infliction of emotional distress claim against Mr. Gelb should be dismissed as Plaintiff has not alleged that Mr. Gelb engaged in any negligent conduct; accordingly, the Court DISMISSES WITHOUT PREJUDICE this claim against Mr. Gelb. Pl.'s Opp'n to Defs. Gelb and WMI, ECF No. 15-2, 5 ("Mr. White concedes that this claim can be dismissed against Mr. Gelb because the actions he took against Mr. White were intentional."). However, Plaintiff contends that he has stated a claim for which relief can be granted against WMI and WISH. The Court will address WMI and WISH's arguments for dismissal in turn.

In the District of Columbia, there are two ways that a plaintiff may state a claim for the negligent infliction of emotional distress—the zone of danger rule or the special relationship rule. Under the zone of danger rule, a plaintiff must allege that: "(1) the plaintiff was in a zone of physical danger, which was (2) created by the defendant's negligence, (3) the plaintiff feared for [his] own safety, and (4) the emotional distress caused was serious and verifiable." *Cornish v. D.C.*, 67 F. Supp. 3d 345, 363 (D.D.C. 2014). Under the special relationship rule, a plaintiff must

allege that: "(1) the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being, (2) there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff, and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Kowalevicz v. United States*, 302 F. Supp. 3d 68, 78 (D.D.C. 2018).

Looking first to WMI's arguments for dismissal, the Court concludes that Plaintiff has failed to allege a negligent infliction of emotional distress claim against WMI under the zone of danger test or the special relationship test.

First, Plaintiff never alleged that he was in the "zone of physical danger" or that WMI's negligence caused him to "fear for [his] own safety." *Cornish*, 67 F. Supp. 3d at 363. The closest that Plaintiff comes to making such an allegation is stating that, on one occasion, he threatened to "call the police if Gelb did not leave the building." Compl., ECF No. 2, ¶ 21. But, Plaintiff did not allege that this interaction placed him in a zone of physical danger or that he feared for his safety. Accordingly, Plaintiff has not stated a negligent infliction of emotional distress claim against WMI under the zone of physical danger rule.

Additionally, Plaintiff has not stated a negligent infliction of emotional distress against WMI under the special relationship rule. In his opposition, Plaintiff argues that he "has alleged … a special relationship or undertaking as between himself and WMI because of the commercial relationship between WMI and WISH and the financial significance of that relationship to WISH, his employer." Pl.'s Opp'n to Defs. Gelb and WMI, ECF No. 15-2, 5. The Court concludes that such a tenuous connection is insufficient to establish a special relationship.

The majority of negligent infliction of emotional distress claims under the special

relationship test arise in the doctor-patient context. *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 814 (D.C. 2011). This is true because in the doctor-patient context "the emotional well-being of others is at the core of, or is necessarily implicated by, the undertaking." *Id.* "[M]any other relationships, even if they involve fiduciary obligations, generally will not come within the rule, because neither the purpose of the relationship nor the fiduciary's undertaking is to care for the plaintiff's well-being; rather the object of the engagement is to obtain a financial, commercial or legal objective." *Id.* at 815. Providing an illustrative, non-exhaustive list of relationships that might qualify as a "special relationship," the District of Columbia Court of Appeals listed "psychiatrist/therapist and patient," "doctor-patient," "funeral home or hospital" and the family of a decedent, and "persons who are appointed to act as guardians and counsel for those who are especially vulnerable," like "children, the elderly, and the disabled." *Id.* at 813-15.

Here, Plaintiff has failed to allege that he and WMI were engaged in "a relationship or undertaking … that necessarily implicates the plaintiff's emotional well-being." *Id.* at 815. At most, Plaintiff has alleged a loose commercial relationship between himself and WMI whereby he was an employee of WISH, an organization that provides housing for WMI participants. Plaintiff provides no support for his argument that such a loose, commercial relationship would be sufficient to form the basis of a negligent infliction of emotional distress claim. *See Bradley v. Nat'l Collegiate Athletic Ass'n*, 249 F. Supp. 3d 149, 177-78 (D.D.C. 2017) (finding that the plaintiff student-athlete could not state a negligent infliction of emotional distress claim against his sporting league because the plaintiff did not establish that the purpose of the relationship involved the plaintiff's emotional well-being); *Lesesne v. D.C.*, 146 F. Supp. 3d 190, 196-97 (D.D.C. 2015) (finding that the plaintiff, an arrestee in a custodial relationship with correctional officers, had not alleged a negligent infliction of emotional distress claim against the defendants

because the plaintiff had not alleged a relationship where the "*purpose* of the relationship []
involve[s] care for another's emotional well-being").

The Court concludes that Plaintiff has failed to state a negligent infliction of emotional
distress claim against WMI. Plaintiff has not alleged that he was placed in the zone of physical
danger by WMI. Nor has Plaintiff alleged that he had a relationship or undertaking with WMI
which in any way implicated his emotional well-being. Accordingly, the Court DISMISSES
WITHOUT PREJUDICE Plaintiff's claim against WMI for the negligent infliction of emotional
distress.

The Court similarly finds that Plaintiff has failed to state a negligent infliction of
emotional distress claim against WISH. Again, Plaintiff never alleged that he was in the "zone of
physical danger" or that WISH's negligence caused him to "fear for [his] own safety." *Cornish*,
67 F. Supp. 3d at 363. Instead, Plaintiff relies on the alleged "special relationship" between
himself and WISH in order to sustain his negligent infliction of emotional distress claim. But, as
with his claim against WMI, Plaintiff has failed to support his allegation of a special relationship.

Most relationships cannot form the basis of a negligent infliction of emotional distress
claim "because neither the purpose of the relationship nor the fiduciary's undertaking is to care
for the plaintiff's emotional well-being; rather the object of the engagement is to obtain a
financial, commercial, or legal objective." *Hedgepeth*, 22 A.3d at 815. Here, Plaintiff has alleged
nothing which would suggest that he and WISH engaged in "a relationship or undertaking …
that necessarily implicates the plaintiff's emotional well-being." *Id.* Instead, Plaintiff has alleged
only a traditional employer-employee relationship, the purpose of which is financial and
commercial in nature. Plaintiff cites no support for the contention that an ordinary employer-
employee relationship can form the basis of a "special relationship." And, as other courts within

this Circuit have held, "[m]erely alleging an employer-employee relationship forclos[es] any special relationship liability." *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 31 (D.D.C. 2018) (internal quotation marks omitted) (dismissing the plaintiff's negligent infliction of emotional distress claim because the plaintiff had pled only an employer-employee relationship); *see also Islar v. Whole Foods Mkt. Grp., Inc.*, 217 F. Supp. 3d 261, 268 (D.D.C. 2016) (explaining that the plaintiff had not made a claim for the negligent infliction of emotional distress because the plaintiff had not alleged "anything other than [an] arm's length, supervisor-employee relationship, foreclosing any 'special relationship' liability"); *see also Teasdell v. D.C.*, No. 15-0445, 2016 WL 10679536, *16 (Sept. 16, 2016 D.D.C.) (dismissing the plaintiff's negligent infliction of emotional distress claim against his employer because the plaintiff had not alleged any facts supporting "that he was in the sort of special relationship with [his employer] that would permit him to bring [a negligent infliction of emotional distress] claim").

Plaintiff provides only one argument in support of finding a special relationship—that he repeatedly complained of Mr. Gelb's harassment to WISH's management. Pl.'s Opp'n to Def. WISH, ECF No. 16-2, 6 (citing Compl., ECF No. 2, ¶¶ 13, 17-20). But, the fact that Plaintiff repeatedly informed his employer of Mr. Gelb's alleged harassment does not transform the employer-employee relationship into a "special relationship." Based on the allegations in the Complaint, Plaintiff's relationship to WISH remained premised on commercial benefit and did not in any way implicate Plaintiff's emotional well-being.

Accordingly, The Court concludes that Plaintiff has failed to state a negligent infliction of emotional distress claim against WISH. Plaintiff has not alleged that he was placed in the zone of physical danger by WISH. Nor has Plaintiff alleged that he had a relationship or undertaking with WISH which in implicated his emotional well-being. Accordingly, the Court DISMISSES

WITHOUT PREJUDICE Plaintiff's claim against WISH for the negligent infliction of emotional distress.

As the Court has now dismissed Plaintiff's negligent infliction of emotional distress claim against Mr. Gelb, WMI, and WISH, Plaintiff's Count 4 claim for the negligent infliction of emotional distress is DISMISSED WITHOUT PREJUDICE in its entirety.

### 5. Count 5- Negligent Supervision and Retention

Finally, WMI moves to dismiss Plaintiff's Count 5 claim for negligent supervision and retention. In order to state a claim for negligent supervision and retention, the plaintiff must allege facts sufficient to support the inference that the employer knew or should have known that the employee behaved in a dangerous or otherwise incompetent manner prior to the conduct giving rise to the claim and that, despite this actual or constructive knowledge, the employer failed to adequately supervise the employee. *See Giles v. Shell Oil Corp.*, 487 A.2d 610, 613 (D.C. 1985). WMI argues that this claim should be dismissed because Plaintiff has failed to allege that WMI knew or should have known about Mr. Gelb's inappropriate behavior prior to the conduct giving rise to Plaintiff's claim.

In his Complaint, Plaintiff makes the conclusory allegation that "WMI knew or should have known that Gelb was unfit to work directly with Mr. White and posed a particular risk of sexually harassing Mr. White." Compl., ECF No. 2, ¶ 57. However, it is not apparent how WMI knew or should have known that Mr. Gelb was unfit to work with Mr. White. Plaintiff has not alleged dangerous or incompetent behavior on the part of Mr. Gelb prior to the incidents alleged in his Complaint. Nor has Plaintiff alleged that he notified WMI of Mr. Gelb's alleged behavior while that behavior was ongoing. *See Rawlings v. DC*, 820 F. Supp. 2d 92, 114-115 (D.D.C. 2011) (requiring plaintiff to show that the employee engaged in dangerous behavior "before" the

incident subject to litigation).

Instead, Plaintiff alleges that "[b]y virtue of Gelb's position as the Director of WMI, WMI was aware of and ratified Gelb's conduct and found it an acceptable part of his employment." Compl., ECF No. 2, ¶ 25. Plaintiff cites only one case in support of this argument, *Phelan v. City of Mount Rainier*, 805 A.2d 930 (D.C. 2002). But the facts of that case in no way resemble the facts currently before the court. In *Phelan*, the court dismissed the plaintiff's negligent supervision and retention claim against the City of Mount Rainier, finding that there was no causal nexus between the City's supervision and retention of an officer and that officer's off-duty shooting of an individual. 805 A.2d at 937-41.

Here, the issue before the Court is whether or not Mr. Gelb's knowledge of his own actions can be imputed to WMI by virtue of Mr. Gelb's position as the Director of WMI. The *Phelan* opinion does not aid the Court in answering this question, and Plaintiff cites no further support for his argument. However, WMI also fails to provide any support for its argument that Mr. Gelb's knowledge cannot be imputed to WMI.

Based on its own research, the Court could find no other cases involving a claim for negligent supervision and retention in which the plaintiff argued that the employee's knowledge should be imputed to the employer based on the employee's position within the organization. Instead, the Court finds the principles of agency law to be instructive. Pursuant to the principles of agency law, "[a]s a general rule, knowledge acquired by a corporation's officers or agents is properly attributable to the corporation itself." *BCCI Holdings (Luxembourg), S.A v. Clifford*, 964 F. Supp. 468, 478 (D.D.C. 1997). As the Director, Mr. Gelb is an officer or agent of WMI. Accordingly, Mr. Gelb's knowledge of his alleged conduct could theoretically be attributed to WMI. And, because Mr. Gelb's conduct constituted a continuing violation, based on Mr. Gelb's

imputed knowledge, WMI would have been on notice that Mr. Gelb required additional training and supervision during the pendency of the continuing violation.

However, there are exceptions to the general rule that knowledge of a corporation's officers will be attributed to the corporation. As is relevant here, "there will be no imputation of knowledge if the officer or agent is adversely interested to the corporation." *Id.* (internal quotation marks omitted). Here, it would appear to the Court that Mr. Gelb's alleged harassment of Plaintiff was adverse to the interest of WMI. Accordingly, Mr. Gelb's knowledge of his behavior would not be imputed to WMI. And, Plaintiff has provided no other allegations in support of WMI's actual or constructive knowledge of Mr. Gelb's conduct. Accordingly, it would appear to the Court that WMI did not have actual or constructive knowledge of Mr. Gelb's conduct. Absent actual or constructive knowledge, Plaintiff's claim of negligent supervision and retention against WMI must fail.

While it would appear that Plaintiff has failed to state a negligent supervision and retention claim against WMI, lacking relevant arguments on this issue from both Plaintiff and WMI, the Court is not yet prepared to rule on this claim. Accordingly, the Court will DENY WITHOUT PREJUDICE WMI's motion to dismiss this claim. As the relevant facts develop, WMI may reassert its motion to dismiss this claim. At that time, both parties should address why or why not Mr. Gelb's knowledge should be imputed to WMI.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART WISH's [14] Motion to Dismiss, or in the alternative, Motion for Summary Judgment and Mr. Gelb and WMI's [13-1] Motion to Dismiss. The Court GRANTS Defendants' Motions and DISMISSES WITH PREJUDICE Plaintiff's claims for:

- Civil battery, because that claim is barred by the statute of limitations;

- Assault, because that claim is barred by the statute of limitations; and

- Intentional infliction of emotional distress, because that claim is barred by the statute of limitations; and

The Court further GRANTS Defendants' Motions and DISMISSES WITHOUT PREJUDICE Plaintiff's claim for negligent infliction of emotional distress, because Plaintiff has failed to state a claim for which relief may be granted. The remainder of Defendants' Motions are DENIED WITHOUT PREJUDICE.[3]

Plaintiff may proceed with his Count 1 claim against WISH under Title VII, his Count 2 claim against WISH under the DCHRA, and his Count 5 claim against WMI for negligent supervision and retention.

An appropriate Order accompanies this Memorandum Opinion.

　　　　　　　　　　　　　　　　/s/　　　　　　　　　　　
　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　United States District Judge

---

[3] In its Motion, WISH also requested that the Court decline to exercise jurisdiction over Plaintiff's DCHRA claim. Def. WISH's Mot., ECF No. 14, 12. However, this request was premised on the Court dismissing all of Plaintiff's federal law claims. Because Plaintiff's Title VII claim remains pending, the Court need not decide whether it would decline to exercise supplemental jurisdiction over Plaintiff's DCHRA claim.